# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRUCE LARKIN,**

        **Plaintiff,**

**v.**                                                        **Case No:   6:15-cv-1295-Orl-31GJK**

**FORT GATLIN SHOPPING CENTER, LLC, BRAZAS CHICKEN, INC. and C. JORDAN ENTERPRISES, INC.,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**    **FORT GATLIN SHOPPING CENTER AND FRIENDLY CONFINES' MOTION FOR SANCTIONS (Doc. No. 47)**
>
> **FILED:**    **August 30, 2016**
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

> **MOTION:**    **PLAINTIFF'S MOTION TO WITHDRAW "DEEMED ADMISSIONS" (Doc. No. 59)**
>
> **FILED:**    **September 24, 2016**
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED as moot**.

> **MOTION:**    **PLAINTIFF'S MOTION FOR SANCTIONS (Doc. No. 64)**
>
> **FILED:**    **September 30, 2016**
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

I.      **BACKGROUND**

On August 3, 2015, Bruce Larkin (the "Plaintiff") instituted this lawsuit under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") against Fort Gatlin Shopping Center, LLC ("Fort Gatlin"), C. Jordan Enterprises, Inc. ("CJE"), and Brazas Chicken, Inc. ("Brazas") (collectively, the "Defendants").  Doc. No. 1. CJE owns and operates a "Friendly Confines" restaurant and Brazas owns and operates a "Brazas Chicken" restaurant in the Fort Gatlin Shopping Center. Doc. No. 1. at 1.  There was little activity in this case until July 2016, when issues concerning Plaintiff's participation in mediation and his deposition arose.  *See* Doc. Nos. 34; 37.  On August 1, 2016, one month prior to the discovery deadline, Plaintiff filed a Motion for Order of Dismissal (the "Motion to Dismiss").  Doc. No. 38.  Plaintiff indicated he no longer wanted to pursue the case due to his "deteriorating medical condition."  *Id*. at 1.  Accordingly, Plaintiff requested the case be dismissed without prejudice.  *Id*. at 4.  On August 10, 2016, Plaintiff filed a Motion for Expedited Ruling on Plaintiff's Motion for Order of Dismissal, and Motion for Protective Order, representing, in relevant part, that he would agree to the case being dismissed with prejudice.  Doc. No. 41.  On August 15, 2016, Defendants filed separate responses in opposition to the Motion to Dismiss, requesting the case be dismissed with prejudice and the Court reserve jurisdiction to allow Defendants to move for attorneys' fees and costs.  Doc. Nos. 44; 45.  On August 16, 2016, the Court entered an Order granting the Motion to Dismiss, dismissing the case with prejudice, and retaining jurisdiction solely to consider the imposition of costs against Plaintiff and the matter of sanctions raised in Defendants' responses.  Doc. No. 46.[1]  Following the dismissal of this case, the parties have engaged in significant motion practice, each seeking sanctions against the other. *See* Doc. Nos. 47, 63, 64, 71, 77, 81.

---

[1] Both Fort Gatlin and CJE have filed a proposed bill of costs. Doc. Nos. 48, 49.

## II. THE MOTIONS

### A. Fort Gatlin and CJE's Motion for Sanctions

On August 30, 2016, Fort Gatlin and CJE (hereinafter, the "Gatlin Defendants") filed a Motion for Sanctions (the "Gatlin Defendants' Motion for Sanctions"), requesting the Court sanction Plaintiff and his counsel pursuant to 28 U.S.C. § 1927, the Court's inherent power, and/or 42 U.S.C. § 12205, and award them costs,[2] expenses, and attorney's fees incurred in this action. Doc. No. 47. One of the bases for the Gatlin Defendants' Motion for Sanctions is that, by failing to respond to certain requests for admissions, Plaintiff was deemed to have admitted he had not visited the Defendants' restaurants prior to bringing suit. Doc. No. 47 at 12. On September 29, 2016, Plaintiff filed a response in opposition to the Gatlin Defendants' Motion for Sanctions. Doc. No. 63.[3] On September 1, 2016, Brazas filed its motion for sanctions, which was withdrawn on September 7, 2016.[4] Doc. Nos. 50- 51. Thus, this Order only pertains to Plaintiff, the Gatlin Defendants, and their respective counsel.

---

[2] On August 30, 2016, Fort Gatlin and CJE filed proposed bills of costs seeking a total of $10,209.50 in costs for hiring ADA experts.   Doc. Nos. 48; 49.

[3] The Court also recognizes the Gatlin Defendants also assert that Plaintiff has effectively admitted he was paid to bring suit. Doc. No. 47 at 2-3; Doc. No. 71 at 17. The Gatlin Defendants continued to make this argument despite the filing of an affidavit by Plaintiff's counsel attesting that neither he nor his law firm have paid (or promised to pay) Plaintiff for initiating this action. Doc. No 63-8 at 1.

[4] Brazas' counsel filed an affidavit stating Brazas' motion for sanctions was withdrawn immediately after its counsel received authentic photos and a sale receipt provided by Plaintiff as proof he visited the Brazas Chicken restaurant. Doc. No. 74 at 5-6. In response to Plaintiff's motion for sanctions, Brazas' counsel astutely states that after reviewing Plaintiff's evidence: "the undersigned merely made a judgment that the Court might not hold Plaintiff to be bound by the admissions and that any potential fight over them was not worth the effort and that he wanted his client *out* of this fight." Doc. No. 73. at 2. Thus, after seeing the evidence Plaintiff produced to show that he visited Brazas' restaurant, Brazas and its counsel exercised their discretion and restraint in favor of withdrawing Brazas' motion for sanctions.

### B. Plaintiff's Motion to Withdraw Admissions

On September 24, 2016, Plaintiff filed a Motion to Withdraw Deemed Admissions (the "Motion to Withdraw Admissions"), requesting the Court withdraw Plaintiff's deemed admissions to the Gatlin Defendants' requests for admissions, and permit Plaintiff to file a response to the same. Doc. No. 59.[5] On October 6, 2016, the Gatlin Defendants filed a response in opposition to the Motion to Withdraw Admissions. Doc. No. 65. On October 10, 2016, Plaintiff filed an affidavit of Pablo Baez attesting to the fact Plaintiff visited both restaurants on March 2, 2015, and attaching photographs taken that day. Doc. Nos. 67, 67-1. On October 14, 2016, Plaintiff filed a reply to the Gatlin Defendants' response. Doc. No. 70.

### C. Plaintiff's Motion for Sanctions

On September 30, 2016, Plaintiff filed a Motion for Sanctions (the "Plaintiff's Motion for Sanctions"), requesting the Court impose a host of sanctions against Defendants, including, but not limited to, an award of costs and attorneys' fees. Doc. No. 64. On October 14, 2016, the Gatlin Defendants filed a response in opposition to Plaintiff's Motion for Sanctions. Doc. No. 71. On October 20, 2016, Brazas filed a response in opposition to Plaintiff's Motion for Sanctions. Doc. No. 73. On October 31, 2016, Plaintiff filed a reply to the Gatlin Defendants' response. Doc. No. 77. On November 17, 2016, Plaintiff filed a reply to Brazas' response. Doc. No. 81.

---

[5] Plaintiff allegedly did not timely respond to the Gatlin Defendants' request for admissions, and thus they were deemed admitted. Plaintiff argues the request for admissions was never received. Doc. No. 65 at 2. Nevertheless, the request for admissions is attached to the Motion to Withdraw Admissions. Doc. No. 59-2.

### III.    STANDARDS OF REVIEW

#### A.  28 U.S.C. § 1927

The Court may require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Therefore, given the permissive language contained in § 1927 (*i.e.* "may") the issue of whether to impose the requested sanctions is left to the sound discretion of the court.  *See, e.g.*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion"); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237-38 (11th Cir. 2007) (section 1927 is discretionary).  The statute's plain language sets forth three (3) requirements that must be met before the court may impose sanctions under § 1927:

1.  The attorney must have engaged in unreasonable and vexatious conduct;

2.  Such unreasonable and vexatious conduct must have multiplied the proceedings; and

3.  The monetary sanction cannot exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (citing *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir. 2001)).  An attorney multiplies court proceedings "unreasonably and vexatiously," thereby justifying sanctions under § 1927, "only when the attorney's conduct is so egregious that it is tantamount to bad faith."  *Amlong*, 500 F.3d at 1239 (internal quotations omitted).[6]  The imposition of sanctions under § 1927 is an "extraordinary remedy", which should be used sparingly.  *See Monk v. Roadway Exp., Inc.*, 599 F.2d 1378, 1382 (5th Cir. 1979) (classifying § 1927's provision for assessment of fees, expenses and costs as an "extraordinary

---

[6] In the Eleventh Circuit, law firms are also subject to sanctions under § 1927.  *Smith v. Grand Bank & Tr. of Fla.*, 193 F. App'x 833, 838 (11th Cir. 2006).

remedy").[7]  The standard for determining the existence of bad faith is an objective one, turning on how a reasonable attorney would have acted under the circumstances rather than on the particular attorney's subjective intent.  *Norelus*, 628 F.3d at 1282 (citing *Amlong*, 500 F.3d at 1239).[8]  An attorney's negligent conduct or the ultimate determination that the claim(s) at issue lacked merit, standing alone, are not enough to support a finding of bad faith.  *Amlong*, 500 F.3d at 1241-42 (quoting *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)).  Rather, a finding of bad faith is warranted where an attorney "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz*, 341 F.3d at 1225.

**B. Inherent Power**

The court's inherent power "is both broader and narrower than other means of imposing sanctions."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  While other sanctions only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and "must continue to exist to fill in the interstices."  *Id*.  The court must exercise its inherent power with "restraint and discretion."  *Id*. at 44.  A court's inherent power to sanction allow it to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Id*. at 45-46 (internal quotation marks omitted).  Thus, "[t]he key to unlocking a court's inherent power is a finding of bad faith."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). When considering sanctions under the court's inherent power, the threshold of bad faith conduct

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[8] Although the attorney's objective conduct is the focus of the analysis, the Eleventh Circuit has recognized that an "attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be [unreasonable and vexatious] if it is done with a malicious purpose or intent." *Amlong*, 500 F.3d at 1241.

"is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Amlong*, 500 F.3d at 1252.

### C.  42 U.S.C. § 12205

The Court may, in its discretion, award the prevailing party in an ADA action his or her attorney's fees, litigation expenses and costs.  42 U.S.C. § 12205.  The Supreme Court has held that in civil rights cases the "plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978) (addressing Title VII's fee-shifting provision).  The *Christiansburg* standard applies to the ADA's fee-shifting provision.  *Bruce v. City of Gainesville*, 177 F.3d 949, 951–52 (11th Cir. 1999).  "[I]f a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422.  In this context, the district court "must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan v. Sch. Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985).  In doing so, the Eleventh Circuit has identified the following non-exclusive factors: 1) whether the plaintiff established a prima facie case; 2) whether plaintiff failed to introduce any evidence to support his or her claims; 3) whether the defendant offered to settle; and 4) whether the court dismissed the case prior to trial or held a trial on the merits.  *Id*.  These factors are "general guidelines only, not hard and fast rules," and "[d]eterminations regarding frivolity are to be made on a case-by-case basis."  *Id*.

## IV.   ANALYSIS

This case is closed. Doc. No. 46. Nevertheless, Plaintiff, the Gatlin Defendants, and their counsel have unnecessarily perpetuated their dispute by filing cross motions for sanctions, in which the clients and their counsel accuse their counterparts of misconduct that justifies the imposition of sanctions. Doc. Nos. 47; 64.   Each attorney has taken pains to justify the imposition of sanctions.  *Id.*   The undersigned has carefully reviewed the motions and finds that the only thing counsel and the parties are guilty of is needlessly compounding these proceedings by seeking sanctions, when there is no basis for such relief.

The central factual dispute underlying the motions is whether the Plaintiff ever visited the Brazas Chicken and Friendly Confines restaurants and, thus, had standing to bring this action. Notwithstanding Plaintiff's failure to respond to the Gatlin Defendants' requests for admissions, a brief disclosure and discussion of the facts should have promptly resolved this issue.[9] Plaintiff and his counsel could have avoided such a dispute by timely responding to the Gatlin Defendants' request for admissions. Similarly, Defendants and their counsel could have avoided such a result by communicating with Plaintiff's counsel about the facts.[10]   But, that is not what happened. Instead, counsel have inundated this Court with numerous motions, responses, and replies on the issue of sanctions. Doc. Nos. 47, 63, 64, 71, 77, 81.

The undersigned has considered a variety of approaches to addressing the motions, including whether it would be best to: 1) hold a hearing to examine what is the root cause of

---

[9] Indeed it did as to Brazas. See *supra* note 4.

[10] The Court specifically recognizes Defendants' behavior regarding photographs attached to Plaintiff's Motion for Sanctions which appear to refute Plaintiff's deemed admissions. Doc. No. 64 at 5-6. After Plaintiff filed an affidavit establishing the validity of the photographs (Doc. No. 67), Defendant (rather than conferring with counsel) filed a reply noting that Plaintiff "failed to indicate which admissions would be admitted or denied if withdrawn." Doc. No. 71 at 10-11 n.18. Such an issue should have been resolved by open communication.

counsels' dysfunctional relationship and, perhaps, to see if there is any way to foster a more professional and productive rapport between them; or 2) issue an order to show cause as to why sanctions should not be imposed against counsel and their clients respectively for moving for sanctions without a good faith basis.  However, the attorneys currently embroiled in what the court views as a wasteful, petty, and unproductive endeavor are adults with substantial experience as counsel.   Regrettably, the undersigned does not believe any of the approaches it has considered would ultimately achieve the desired goal of advancing professionalism in a meaningful way. Therefore, because both parties and their counsel are equally to blame for this inglorious result, the undersigned simply recommends that this Court exercise the kind of restraint that neither the parties nor their counsel have and quickly end their feud by denying the motions at issue.[11]

## V. CONCLUSION

Accordingly, it is **RECOMMENDED** that:

1. The Gatlin Defendants' Motion for Sanctions (Doc. No. 47) be **DENIED**; and

2. Plaintiff's Motion to Withdraw Admissions (Doc. No. 59) be **DENIED as moot**; and

3. Plaintiff's Motion for Sanctions (Doc. No. 64) be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

---

[11] The undersigned has considered all the bases alleged by the Gatlin Defendants as a basis for sanctions, including that Plaintiff is a serial filer with no cognizable interest, that Plaintiff engaged in dilatory discovery practices, and that Plaintiff failed to comply with orders of this Court. *See* Doc. No. 47. Although Plaintiff and his counsel's conduct was at times dilatory, for the reasons discussed above, sanctions are not warranted.

Recommended in Orlando, Florida on December 8, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy